J-A14011-24                    2025 PA Super 124

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                        : PENNSYLVANIA
                                                        :
                        v.                              :
                                                        :
                                                        :
                                                        :
RIYAADH SUMPTER                       :
                                                        :
                Appellant                    :       No. 2271 EDA 2023

Appeal from the Judgment of Sentence Entered October 25, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0009763-2022

BEFORE:    LAZARUS, P.J., STABILE, J., and LANE, J.

DISSENTING OPINION BY LANE, J.:                    **FILED JUNE 23, 2025**

I respectfully dissent from the Majority's disposition in this appeal by

Riyaadh Sumpter ("Sumpter"), from the judgment of sentence imposed

following his conviction of carrying firearms on public streets or public property

in Philadelphia ("Section 6108").[1]    I would conclude the Majority

mischaracterizes the right at issue in this case, which impacts the level of

constitutional scrutiny we must apply to Sumpter's equal protection

challenge.[2]    As I would further determine that Sumpter's remaining three

_____

[1] **See** 18 Pa.C.S.A. § 6108.

[2] I agree with the Majority's conclusion that Sumpter presents an as-applied,
rather than facial, equal protection challenge to Section 6108. **See** Majority
Opinion at 3. As the Majority highlights, Section 6108 prohibits both the
unlicensed open and concealed carry of a firearm in Philadelphia. **See id**; **see
also** 18 Pa.C.S.A. § 6108; **Commonwealth v. Hicks**, 208 A.3d 916, 926,
944 (Pa. 2019) (noting Section 6108 "requires a license for either open or
*(Footnote Continued Next Page)*

challenges to Section 6108 are non-meritorious, I would affirm his judgment of sentence.[3]

I first note the applicable standard of review. "When an appellant challenges the constitutionality of a statute, he or she presents this Court with a pure question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Bradley*, 232 A.3d at 756 (citation omitted). "[T]here is a strong presumption in the law that legislative enactments do not violate the constitution," and we will only invalidate a statute "if it 'clearly, palpably and plainly' violates the constitution." *Commonwealth v. Grove*, 170 A.3d 1127, 1144-45 (Pa. Super. 2017) (citation omitted).

_____

concealed carry of a firearm within Philadelphia"). Here, Sumpter's arguments concern only the application of Section 6108 to "particular circumstances," namely, the unlicensed **open** carry of a firearm within Philadelphia. **See Commonwealth v. Bradley**, 232 A.3d 747, 757 (Pa. Super. 2020) (stating that an as-applied attack "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right").

[3] Sumpter raises four constitutional challenges to his conviction, arguing that: (1) Section 6108 violates his equal protection rights; (2) Pennsylvania's firearm licensing scheme, set forth in 18 Pa.C.S.A. § 6109 ("Section 6109"), violates the Second Amendment to the United States Constitution; (3) the licensing scheme of Section 6109 and the licensing requirement of Section 6108 for open carry in Philadelphia violate the Pennsylvania Constitution's right to bear arms, **see** Pa. Const., Art. I, § 21; and (4) Section 6108 violates the prohibition on special laws of Article III, Section 32 of the Pennsylvania Constitution. The Majority reaches only the first of these issues, holding that Section 6108 violated Sumpter's equal protection rights under the federal Constitution. As I would determine Sumpter's equal protection claim is meritless, I would proceed to address his remaining three claims.

As the Majority states, equal protection requires that "persons in like circumstances will be treated similarly," but "does not require that all persons under all circumstances enjoy identical protection under the law." **Commonwealth v. Jacquez**, 113 A.3d 834, 838 (Pa. Super. 2015); **see also** Majority Opinion at 6. I also incorporate the Majority's discussion of the law setting forth the three levels of scrutiny for an equal protection challenge. **See** Majority Opinion at 6 (discussing strict scrutiny, intermediate scrutiny, and rational basis).

As the Majority discusses, this Court previously addressed an equal protection challenge to Section 6108 in **Commonwealth v. Scarborough**, 89 A.3d 679 (Pa. Super. 2014). In that case, officers detained the defendant ("Scarborough") on a public street in Philadelphia and discovered a revolver concealed in his pocket. **See id**. at 682. The Commonwealth charged him with violating Section 6108, as well as firearms not to be carried without a license ("Section 6106"), which prohibits, *inter alia*, the unlicensed concealed carry of a firearm throughout Pennsylvania. **See id**.; **see also** 18 Pa.C.S.A. § 6106(a)(1). The trial court found him guilty of both offenses. **See id**. Relevantly, Scarborough's simultaneous violation of Section 6108 was an

"other criminal violation" that elevated the grading of the Section 6108 count from a first-degree misdemeanor to a third-degree felony. *See id*. at 685.[4]

On appeal, Scarborough argued that because he would have faced a first-degree misdemeanor if he committed his offense in any other county of the Commonwealth, the "geographical distinction" inherent in Section 6108 violated his equal protection rights. *Id*. This Court disagreed, first determining that the rational basis level of scrutiny applied:

> The class created by Section 6108, "persons located in Philadelphia," is not based on race, national origin, sex, or illegitimacy. *The right at issue under Section 6106, "the right to carry a concealed weapon," and the right at issue under Section 6108, "the right to carry a firearm on the streets of Philadelphia without a license," are not fundamental rights*. They manifestly do not rise to the protection afforded by the Second Amendment's general guarantee of the right to keep and bear arms. . . . Clearly, the nature of our review as to these statutes must be rational basis.

*Id*. at 686 (emphasis added).

The *Scarborough* Court then proceeded to determine that on the merits under the rational basis test, there was no equal protection violation: "Given a rational basis review, we find that both statutes serve a legitimate state interest. [I]t is no secret that the level of gun violence in Philadelphia

---

[4] *See also* 18 Pa.C.S.A. § 6106(a)(1) (providing that a person who carries a concealed firearm, without a license, commits a felony of the third degree), (2) (providing, *inter alia*, that any person who carries a concealed firearm on his person without a valid license *and has not committed any other criminal violation* commits a misdemeanor of the first degree).

is staggeringly disproportionate to any other area of Pennsylvania." **Scarborough**, 89 A.3d at 686.

In the case *sub judice*, the Majority recognizes that **Scarborough** found that Section 6108 passed constitutional muster under an equal protection rational basis review. **See** Majority Opinion at 6-8. Moreover, the Majority recognizes that a three-judge panel of this Court is generally bound by our prior published decisions. **See id**. at 8-9 (*citing* **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006)).

However, the Majority finds that **Scarborough** "is presently in conflict with" the Supreme Court of the United States decisions of **New York State Rifle & Pistol Ass'n v. Bruen**, 597 U.S. 1 (2022) ("**Bruen**"), and **United States v. Rahimi**, 602 U.S. 680 (2024). Majority Opinion at 9 (*citing* **Commonwealth v. Eichler**, 133 A.3d 775, 784 n.6 (Pa. Super. 2016) (observing that the Superior Court "must follow the United States Supreme Court's interpretation of the federal Constitution")). Specifically, the Majority reasons that "**Bruen** established that the right to keep and bear arms applies outside the home" and that **Bruen** and **Rahimi** "confirm that the right involved **in this case** is fundamental." **Id**. (emphasis added). The Majority concludes that to the extent **Scarborough** holds otherwise, "**Scarborough** has been abrogated by **Bruen** and **Rahimi**." **Id**.

While I agree with the general proposition that we are bound by United States Supreme Court decisions interpreting the federal constitution, I believe

the Majority errs in equating the right established in **Bruen** and **Rahimi** with the right Sumpter seeks to assert here. As the Majority recognizes, Sumpter challenges Section 6108 "insofar as it prohibits the **unlicensed** open carry of firearms on public streets and public property in the city of Philadelphia." Majority Opinion at 3 (emphasis added). While **Bruen** and **Rahimi** each affirm that an individual has a right to carry a firearm outside the home, neither decision held that states are barred from imposing any licensing requirement on the exercise of that right.

In **Bruen**, the High Court reviewed a New York statute that provided the following: a person wishing to carry a firearm outside their home

> must obtain an unrestricted license to "have and carry" a concealed 'pistol or revolver.' To secure that license, the applicant must prove that "proper cause exists" . . . .[5]
>
> No New York statute defines "proper cause." But New York courts have held that an applicant shows proper cause only if he can "demonstrate a special need for self-protection distinguishable from that of the general community." This "special need" standard is demanding. For example, living or working in an area "'noted for criminal activity'" does not suffice. Rather, New York courts generally require evidence "of particular threats, attacks or other extraordinary danger to personal safety."
>
> When a licensing officer denies an application, judicial review is limited. New York courts defer to an officer's application of the proper-cause standard unless it is "arbitrary and capricious." . . . The rule leaves applicants little recourse if their local licensing officer denies a permit.

_____

[5] "If an applicant cannot make that showing, he can receive only a 'restricted' license for public carry, which allows him to carry a firearm for a limited purpose, such as hunting, target shooting, or employment." **Bruen**, 597 U.S. at 12.

***Bruen***, 597 U.S. at 12-13 (citations omitted).

The ***Bruen*** Court then immediately observed: "New York is not alone in requiring a permit to carry a handgun in public." ***Id***. at 13. New York, five other states, "and the District of Columbia have 'may issue' licensing laws, under which ***authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria***, usually because the applicant has not demonstrated cause or suitability for the relevant license." ***Id***. at 13-14 (emphasis added).

The High Court distinguished these states from "the vast majority of States — [forty-three] by [its] count — [which] are 'shall issue' jurisdictions, where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability.[]" ***Id***. at 13. At this juncture, the High Court set forth a lengthy footnote, which cited the relevant firearm licensing statutes in these forty-three states. Importantly, among these cited statutes was Pennsylvania's Section 6109. ***See id***. at 13 n.1.

Next, the ***Bruen*** Court reiterated that it "granted *certiorari* to decide whether ***New York's*** denial of petitioners' license applications violated the Constitution." ***Id***. at 17 (emphasis added). The Court considered its prior

precedent, and held that "the Second and Fourteenth Amendments[6] protect an individual's rights to carry a handgun for self-defense outside the home." *Id*. at 10. The Court ultimately held: "**New York's proper-cause requirement** violates the Fourteenth Amendment in that it prevents law-abiding citizens with ordinary self-defense needs from exercising their right to keep and bear arms."[7] *Id*. at 71 (emphasis added).

Critically, the **Bruen** Court emphasized that its decision was limited to the "may issue" licensing regime of New York, which was distinct from "shall issue" licensing schemes, including that of Pennsylvania. *Id*. at 13 & n.1, 38 n.9. The Court indicated the presumptive constitutionality of the "shall issue" licensing schemes:

---

[6] The due process clause of the Fourteenth Amendment incorporates the Second Amendment right to keep and bear arms against state governments. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010).

[7] In so holding, the **Bruen** Court also adopted the following framework for analyzing Second Amendment challenges:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 17. As I would conclude, *infra*, that *Bruen* does not apply to Section 6109, I do apply this analysis in this case.

> ***To be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of the [forty-three] States' "shall-issue" licensing regimes, under which a general desire for self-defense is sufficient to obtain a permit.*** Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent law-abiding, responsible citizens from exercising their Second Amendment right to public carry.
>
> Rather, it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens. And they likewise appear to contain only narrow, objective, and definite standards guiding licensing officials, rather than requiring the "appraisal of facts, the exercise of judgment, and the formation of an opinion —features that typify proper-cause standards like New York's. . . . .

*Id*. at 38 n.9 (citations, brackets, and some quotation marks omitted and emphasis and paragraph break added); ***see also id***. at 79-80 (opining that "shall issue" schemes are "constitutionally permissible, subject of course to an as-applied challenge if a shall-issue licensing regime does not operate in that manner in practice") (Kavanaugh, J., concurring).

In light of the foregoing discussion, I disagree with the Majority's conclusions that ***Bruen*** applies and requires a finding that Section 6108 violates equal protection. First, ***Bruen***'s holding was narrow. It did not strike down a state law criminalizing the open carrying of a firearm without a license. Instead, ***Bruen*** addressed a state licensing authority's "***discretion*** to deny concealed-carry licenses even when the applicant satisfies the statutory criteria," and found such a licensing scheme was unconstitutional. ***Bruen***, 597 U.S. at 14 (emphasis added). As discussed above, Pennsylvania does not

follow such a procedure. Indeed, the **Bruen** Court specifically distinguished Pennsylvania's "shall issue" licensing scheme from the "may issue" regime set forth in New York's statute, and further unambiguously stated that its holding did not apply to these jurisdictions. **See id**. at 38 n.9.

Next, I consider **Rahimi**, in which the United States Supreme Court addressed a facial challenge to a federal criminal statute, 18 U.S.C. § 922(g)(8), which forbade possession of a firearm by an individual subject to a domestic violence order, where the order included a finding that the individual represented a credible threat to their partner. **See Rahimi**, 602 U.S. at 688. In its decision, the Court reaffirmed that "the right to keep and bear arms is among the fundamental rights necessary to our system of ordered liberty." **Id**. at 690. Reviewing the historical record of firearm regulation, the Court found analogues to section 922(g)(8) in "surety and going armed laws," which confirmed that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed" by the government. **Id**. at 698. The Court thus rejected the challenge to section 922(g)8), finding it was consistent with this historical tradition. **See id**. at 700-02.

As the above review of **Bruen** and **Rahimi** makes plain, neither case held that there is a right to openly carry a firearm ***without obtaining a license to do so***. Rather, **Bruen** explicitly recognized that states may constitutionally impose non-discretionary measures to ensure that only "law-

abiding, responsible citizens" "bear[] arms in the jurisdiction." *Bruen*, 597 U.S. at 38 n.9 (citation omitted). *Bruen* specifically stated that "shall issue" licensing schemes, such as Pennsylvania's, are consistent with the Second Amendment right to keep and bear arms. *See id*.

By contrast, the right Sumpter seeks to vindicate in this appeal — the *unlicensed* open carry of a firearm — is distinguishable from the right recognized as fundamental by the United States Supreme Court. We note that Sumpter presented no evidence below that he suffered because he applied for a license to carry a firearm but his application was denied, or that he was ineligible to apply for a license. Rather, it appears that Sumpter simply carried a handgun on a public street in Philadelphia without regard to the requirement that he obtain a license before doing so.

Accordingly, I would conclude that *Bruen* and *Rahimi* did not abrogate *Scarborough*, and that decisions' equal protection analysis, with respect to Section 6108, controls this case. As Section 6108's application to the unlicensed open carry of a firearm does not burden a fundamental right and Sumpter plainly does not fall within a suspect class, we apply the lowest level of scrutiny — rational basis — to Sumpter's equal protection claim. *See Scarborough*, 89 A.3d at 686. As we reasoned,

> Section 6108 rationally addresses gun violence in Philadelphia. Throughout the Commonwealth of Pennsylvania, a license is necessary only if carrying a concealed firearm; openly carried firearms do not require a license. However, in Philadelphia a firearm carried openly requires a license. Clearly the purpose of the Legislature in enacting this prohibition is twofold. First, as the

most populated city in the Commonwealth with a correspondingly high crime rate, the possession of a weapon on a city street, particularly the brandishing of a weapon, can invoke a fearful reaction on behalf of the citizenry and the possibility of a dangerous response by law enforcement officers. Second, a coordinate purpose is to aid in the efforts of law enforcement in the protection of the public; in Philadelphia, the police are empowered to arrest an individual for overtly carrying a firearm without first determining if it is licensed or operable. We find that Section 6108 serves a legitimate state interest.

*Id*. at 686-87 (citations omitted).

We are bound by our prior decision. *See Pepe*, 897 A.2d at 465. I would reach the same conclusion as *Scarborough* and find that Section 6108, as applied to Sumpter, does not violate his right to equal protection.

Having concluded that this panel may not grant relief on Sumpter's first issue, I would reach his remaining three claims, and conclude they are meritless.

In his second issue, Sumpter argues that Section 6109, Pennsylvania's firearm licensing statute, violates the Second Amendment. Sumpter contends that, contrary to *Bruen*'s seeming endorsement of the Pennsylvania licensing scheme, Section 6109 unconstitutionally does permit refusal of a license "for subjective reasons, rather than being confined to definite objective standards."[8] Sumpter's Brief at 41. He specifically notes Section 6109(e)'s criteria that require refusal where: the applicant has bad character or

_____

[8] Sumpter further argues that the string footnote in *Bruen* — containing the citation to Section 6109 and discussed above — was dictum, as the validity of Pennsylvania's licensing scheme was not before the High Court. *See* Sumpter's Brief at 35.

reputation; has been committed to a mental institution; is addicted to marijuana, stimulants, narcotics, or depressive drugs; or is a habitual drunkard. *See id*. at 37-38 (*citing* 18 Pa.C.S.A. § 6109(e)(1)(i), (v)-(vii)). Sumpter also asserts that the waiting period, of up to forty-five days, for a decision on a license "is too lengthy and violates the Second Amendment." *Id*. at 43; *see* 18 Pa.C.S.A. § 6109(e)(1).

Sumpter lacks standing to bring a challenge to the Pennsylvania licensing scheme under the Second Amendment.[9] Our Supreme Court has explained the doctrine of standing as follows:

> In Pennsylvania, the doctrine of standing . . . is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been aggrieved. . . . [T]he core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge. . . .

*Office of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014) ("*Donahue*") (quotation marks omitted).

Sumpter presented no evidence before the trial court that he applied for a license, nor that he was ineligible for a license under any specific provision of Section 6109. Although Sumpter clearly sustained harm through his

---

[9] While the trial court did not reject Sumpter's Second Amendment challenge on standing grounds, "[a]s an appellate court, we may affirm on any legal basis supported by the certified record." *Commonwealth v. Ani*, 293 A.3d 704, 729 (Pa. Super. 2023) (citation omitted).

Section **6108** conviction, because he never sought to obtain a license he was "not adversely affected in any way by the matter he seeks to challenge" — the Section 6109 licensing criteria and forty-five day waiting period. **Id**. Therefore, as Sumpter was not aggrieved by the Section 6109 provisions, his Second Amendment challenge to those provisions fails for lack of standing. **Cf. Bruen**, 597 U.S. at 15-16 (addressing Second Amendment challenges to New York licensing scheme brought by petitioners following denial of license applications); **Commonwealth v. Livingston**, 332 A.3d 1229 (Pa. Super. 2024) (unpublished memorandum at *19-20) (finding appellant had standing to bring constitutional challenge to Section 6109, in appeal from Section 6108 conviction, where he alleged he was ineligible for a license because he was between eighteen and twenty years old at the time of his conviction).[10]

In his third issue, Sumpter raises a two-fold constitutional claim pursuant to the Pennsylvania Constitution's right to bear arms. **See** Pa. Const., Art. I, § 21 (stating that "[t]he right of the citizens to bear arms in defense of themselves and the State shall not be questioned"). First, Sumpter repeats his challenge to Section 6109's allegedly subjective licensing criteria and forty-five day waiting period, now grounding this argument in the purportedly greater protection of Pennsylvania's right to bear arms. Second,

---

[10] **See** Pa.R.A.P. 126(b)(1)-(2) (providing that an unpublished non-precedential memorandum decision of the Superior Court, filed after May 1, 2019, may be cited for its persuasive value).

- 14 -

Sumpter challenges Section 6108's imposition of any licensing requirement at all on the open carry of a firearm in Philadelphia. He contends that such a restriction is contrary to the historical tradition of firearm regulation in Pennsylvania, where "the right to bear arms openly has never required permission through a license grant to exercise this right." Sumpter's Brief at 47.

With respect to the first part of Sumpter's third issue, I would determine he lacks standing to challenge Section 6109's licensing requirements under the Pennsylvania Constitution, just as he does under the federal Second Amendment. There is no evidence that Sumpter ever applied for a license or that he was ineligible under the criteria of which he now complains. Therefore, he was not aggrieved by Section 6109 and cannot bring a challenge to it on appeal. **See Donahue**, 98 A.3d at 1229.

I would find that Sumpter is aggrieved by Section 6108's licensing requirement for open carrying in Philadelphia — and therefore has standing to pursue this claim — as absent the licensing requirement his Section 6108 conviction could not stand. Nevertheless, his argument lacks merit. Contrary to Sumpter's arguments, this Court has held that Article I, Section 21 does **not** provide greater protection than the Second Amendment. **See Commonwealth v. Jenkins**, 328 A.3d 1076, 1095-96 (Pa. Super. 2024). **Bruen** explicitly found that licensing schemes with "well-defined restrictions," "to ensure only that those bearing arms in the jurisdiction are, in fact, law-

abiding, responsible citizens," are consonant with the right to keep and bear arms. *Bruen*, 597 U.S. at 38 & n.9 (citation and quotation marks omitted). Indeed, as discussed above, the *Bruen* Court stated that Pennsylvania's "shall-issue" licensing scheme is presumptively constitutional. *See id*. at 38 n.9. Sumpter cites nothing from the historical record to contradict a conclusion that the General Assembly's imposition of a licensing requirement on the open carry of firearms in Philadelphia violates the Pennsylvania Constitution.

In his final issue, Sumpter contends that Section 6108, which applies only in "a city of the first class," violates Pennsylvania's prohibition on local or special laws. Pursuant to Article III, Section 32 of the Pennsylvania Constitution, entitled "Certain Local and Special laws":

> The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law and specifically the General Assembly shall not pass any local or special law:
>
> 1. Regulating the affairs of counties, cities, townships, wards, boroughs or school districts[.]

Pa. Const. Art. III, § 32. Sumpter observes that a city of the first class must have more than one million inhabitants and argues that it is "highly improbable" based on demographic trends that any city will ever join Philadelphia in the first class. Sumpter's Brief at 55; *see also* 11 Pa.C.S.A. § 201(1) (defining cities of the first class as "having a population of at least 1,000,000 inhabitants"). Therefore, Sumpter asserts that Section 6108 "is a

- 16 -

substantially closed class applying to Philadelphia" only and that this Court must strike the statute down as a *per se* violation of Article III, Section 32. Sumpter's Brief at 57.

Sumpter's argument lacks merit. First, Sumpter ignores that the Pennsylvania Constitution explicitly authorizes the General Assembly's enactment of "general legislation" concerning specific classes of cities or other political subdivisions:

> The Legislature shall have power to classify counties, cities, boroughs, school districts, and townships according to population, and all laws passed relating to each class, and all laws passed relating to, and regulating procedure and proceedings in court with reference to, any class, shall be deemed general legislation within the meaning of this Constitution.

Pa. Const. Art. III, § 20. Our Supreme Court has explained the distinction between unconstitutional local or special laws and constitutional general legislation:

> In general, a special law is the opposite of a general law. A special law is not uniform throughout the state or applied to a class. A general law is. It is well known that the Legislature has classified cities and counties. A law dealing with all cities or all counties of the same class is not a special law, but a general law, uniform in its application. But a law dealing with but one county of a class consisting of ten, would be local or special.

***Torbik v. Luzerne County***, 696 A.2d 1141, 1146 (Pa. 1997) (citation omitted).

Furthermore, our sister Court has recognized that the fact that legislation applies to only a single pollical subdivision does not render it an unconstitutional special law. ***See Wings Field Preservation Assocs., L.P.***

*v. Dep't of Trans.*, 776 A.2d 311, 318 (Pa. Cmwlth. 2001). Rather, legislation is a valid general law when it treats the class "uniformly," regardless of the class' size. *Id*.

Here, notwithstanding the fact that Philadelphia is currently the only city of the first class, Section 6108 applies uniformly to all members of that class. Therefore, it constitutes validly enacted general legislation and is not in violation of the prohibition on special or local laws. *See Torbik*, 696 A.2d at 1146; *see also Wings Field*, 776 A.2d at 318.[11]

Therefore, as I would reject each of Sumpter's appellate challenges to Section 6108, I would affirm his judgment of sentence. For the foregoing reasons, I respectfully dissent from the Majority's decision.

_____

[11] Indeed, the cases on which Sumpter relies fail the uniformity requirement as the legislation at issue imposed additional requirements to create a "class of one" within a large class. *See West Mifflin Area School District v. Zahorchak*, 4 A.3d 1042, 1049 (Pa. 2010) (holding that legislation which "provide[d] a remedy solely for the adverse circumstances" of Duquesne School District to the exclusion of the remaining third-class school districts was an invalid special law); *Harrisburg School District v. Hickok*, 761 A.2d 1132, 1136 (Pa. 2000) (finding violation of Article III, Section 32 where legislation excluded any school district coterminous with a city that "contains the permanent seat of government," *i.e.* Harrisburg School District, from requirements applicable to remainder of second-class school districts); *see also Wings Field*, 776 A.2d at 318-19 (holding that law applicable only to second class counties with a population of greater than 675,000 persons — *i.e.*, Montgomery County and not the other two second class counties — was an unconstitutional special law).