J-A14011-24          2025 PA Super 124

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RIYAADH SUMPTER :
:
Appellant : No. 2271 EDA 2023

Appeal from the Judgment of Sentence Entered October 25, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  MC-51-CR-0009763-2022

BEFORE:  LAZARUS, P.J., STABILE, J., and LANE, J.

OPINION BY STABILE, J.:                    **FILED JUNE 23, 2025**

Appellant, Riyadh Sumpter, appeals from the October 25, 2022 judgment of sentence imposing twelve months of probation for openly carrying a firearm in the City of Philadelphia without a license (18 Pa.C.S.A. § 6108).[1]  Appellant argues that § 6108 is unconstitutional under both the United States and Pennsylvania Constitutions.   We find § 6108

---

[1] Section 6108 provides:

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1) such person is licensed to carry a firearm; or

(2) such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.  Appellant was unlicensed and not exempt under § 6108(2).

unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and vacate the judgment of sentence.

The facts are simple and undisputed. Police observed Appellant walking on a street in Philadelphia with the handle of a handgun visibly protruding from his waistband. Appellant stated he was carrying the weapon for self-defense due to the amount of shootings in the vicinity. He was detained, arrested, and convicted of violating § 6108.[2] Philadelphia is the only city of the first class in Pennsylvania, and therefore the only place in the Commonwealth where the open (as opposed to concealed) carry of a firearm requires a license. In all other areas of the Commonwealth, unlicensed open carry is permitted at age 18. 18 Pa.C.S.A. § 6110.1(a). Persons applying for a carry license in Pennsylvania must be 21 years of age. 18 Pa.C.S.A. § 6109(b). Appellant claims § 6108 unlawfully burdens his right to equal protection under the United States and Pennsylvania Constitutions because it impinges his fundamental right to bear arms under the Second Amendment

_____

[2] At a preliminary hearing before the Philadelphia Municipal Court, the court dismissed a charge under 18 Pa.C.S.A. § 6106, which prohibits unlicensed concealed carry of a firearm, finding insufficient evidence.

to the United States Constitution[3] and Article I, § 21 of the Pennsylvania Constitution.[4]

While Appellant does not specify whether his challenge to § 6108 is facial or as applied, it is clear from the facts and procedural history of this case that Appellant was apprehended for open carry of a firearm. The handle of Appellant's firearm was visibly protruding from his waistband and the charge against him for unlicensed concealed carry under 18 Pa.C.S.A. § 6106 was dismissed. For purposes of Appellant's equal protection argument, which we conclude is dispositive, we analyze the constitutionality of § 6108 insofar as it prohibits the unlicensed open carry of firearms on public streets and public property in the city of Philadelphia. That is, we address the constitutionality of § 6108 as applied to Appellant in this case. We do not address the overlap between § 6108 and § 6106, insofar as both statutes criminalize unlicensed **concealed** carry within the city of Philadelphia and therefore subject violators in Philadelphia to two convictions for that offense. That application of § 6108 is not before us.

---

[3] "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend II.

[4] "The right of the citizens to bear arms in defense of themselves and the State shall not be questioned." Pa. CONST. Art. I, § 21.

"In alleging that a law or policy violates Equal Protection, a plaintiff can make two kinds of challenges: facial or as-applied." **M.H. v. Jeppesen**, 677 F. Supp.3d 1175, 1190 (D. Idaho 2023), *reversed in part on other grounds*, 2024 WL 4100235 (9th Cir. Sept. 6, 2024). The United States Supreme Court first recognized the application of as applied challenges to equal protection claims in **City of Cleburne v. Cleburn Living Ctr.**, 473 U.S. 432, 435 (1985). "An as-applied attack […], does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." **Commonwealth v. Papp**, 305 A.3d 62, 70 (Pa. Super. 2023), *appeal denied*, 316 A.3d 4 (Pa. 2024), **cert. denied Papp v. Pennsylvania**, 145 S. Ct. 438 (2024).

As applied challenges are preferred over facial challenges because they permit the judicial branch to proceed case by case:

> For a host of good reasons, courts usually handle constitutional claims case by case, not en masse. **See Washington State Grange v. Washington State Republican Party**, 552 U.S. 442, 450–451 (2008). 'Claims of facial invalidity often rest on speculation' about the law's coverage and its future enforcement. **Id.** at 450. And 'facial challenges threaten to short circuit the democratic process' by preventing duly enacted laws from being implemented in constitutional ways. **Id.** at 451.

**Moody v. NetChoice, LLC**, 603 U.S. 707, 723 (2024).

The Fourteenth Amendment to the United States Constitution provides: "No State shall […] deny to any person within its jurisdiction the equal

protection of the laws." U.S. CONST. amend XIV, § 1. Likewise, Article I of the Pennsylvania Constitution provides, in pertinent part:

> ### § 1. Inherent rights of mankind.
>
> All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.
>
> […]
>
> ### § 26. No discrimination by Commonwealth and its political subdivisions.
>
> Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right.

Pa. CONST. Art. I, §§ 1, 26. Article III, § 32 of the Pennsylvania Constitution prohibits the passage of special laws "[r]egulating the affairs of counties, cities, townships, wards, boroughs or school districts." Pa. CONST. Art. III, § 32.[5] In analyzing a constitutional text, we are mindful that it was "written to be understood by voters" and that "its words and phrases were used in their normal and ordinary as distinguished from technical meaning." *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008).

_____

[5] We are cognizant that Article III, § 20 of the Pennsylvania Constitution permits the General Assembly to classify cities and provides that "all laws passed relating to each class […] shall be deemed general [not special] legislation within the meaning of this Constitution." Pa. CONST. Art. III, §20. Because we find the federal Equal Protection Clause dispositive, we do not address the inner workings of the Pennsylvania Constitution.

"The Equal Protection Clause, […] does not obligate the government to treat all persons identically, but merely assures that all similarly situated persons are treated alike." *Small v. Horn*, 722 A.2d 664, 672 (Pa. 1998). When faced with an equal protection claim, we normally apply one of three levels of scrutiny: strict scrutiny to the restriction of a fundamental right; intermediate scrutiny to the restriction of an important but not fundamental right; and rational basis review in all other instances. *William Penn Sch. Dist. v. Pennsylvania Dep't of Educ.*, 170 A.3d 414, 457–58 (Pa. 2017). We address the appropriate analysis of Appellant's claim in greater detail below.

In several recent landmark decisions, the United States Supreme Court ("SCOTUS") has held that the Second Amendment confers an individual right to keep and bear arms within the home for self-defense (*Heller*); and to keep and bear arms outside the home for self-defense (*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)). The Second Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). "[T]he right to keep and bear arms is among the 'fundamental rights necessary to our system of ordered liberty.'" *United States v. Rahimi*, 602 U.S. 680, 690 (2024) (quoting *McDonald*).

In this Court's last pronouncement on equal protection as it applies to the right to bear arms, we upheld § 6108 under a rational basis test.

***Commonwealth v. Scarborough***, 89 A.3d 679 (Pa. Super. 2014), *appeal denied*, 102 A.3d 985 (Pa. 2014). Scarborough was apprehended in Philadelphia with a .22 revolver concealed in his jacket pocket, and he did not have a concealed carry license. Scarborough was convicted under 18 Pa.C.S.A.§ 6106, which prohibits the concealed carry of a firearm without a license, and § 6108, because he committed the offense in Philadelphia. Scarborough's offense under § 6106 would have been a first degree misdemeanor anywhere in Pennsylvania except Philadelphia.[6] But because of his simultaneous offense under § 6108, his § 6106 offense was graded as a third degree felony. Scarborough raised an equal protection challenge because persons guilty of unlicensed carry are punished more severely in Philadelphia than anywhere else in the Commonwealth. ***See id.*** at 685-86.

In rejecting Scarborough's argument, a panel of this Court reasoned that the right to carry a concealed firearm and the right to carry a firearm on the streets of Philadelphia without a license are not fundamental rights. ***Id.*** at 686. "They manifestly do not rise to the protection afforded by the Second Amendment's general guarantee of the right to keep and bear arms." ***Id.***

---

[6] Section 6106(a) provides that the crime is graded as a first degree misdemeanor so long as the offender is otherwise eligible to possess a valid license and has not "committed any other criminal violation." 18 Pa.C.S.A. § 6106(a). When a § 6106 violation occurs within the city of Philadelphia, the offender is also guilty of carrying a firearm without a license in Philadelphia under § 6108, and § 6108 becomes the "other criminal violation" that raises the grading of the § 6106 offense to a third degree felony.

Further, the *Scarborough* panel noted that the class created by § 6108 was not based on race, sex, or any other suspect categorization. *Id.* And § 6108 passed the rational basis test because the gun violence in Philadelphia "is staggeringly disproportionate to any other area of Pennsylvania." *Id.*

> Section 6108 rationally addresses gun violence in Philadelphia. Throughout the Commonwealth of Pennsylvania, a license is necessary only if carrying a concealed firearm; openly carried firearms do not require a license. However, in Philadelphia a firearm carried openly requires a license. Clearly the purpose of the Legislature in enacting this prohibition is twofold. First, as the most populated city in the Commonwealth with a correspondingly high crime rate, the possession of a weapon on a city street, particularly the brandishing of a weapon, can invoke a fearful reaction on behalf of the citizenry and the possibility of a dangerous response by law enforcement officers. Second, a coordinate purpose is to aid in the efforts of law enforcement in the protection of the public; in Philadelphia, the police are empowered to arrest an individual for overtly carrying a firearm without first determining if it is licensed or operable.

*Id.* at 686–87 (citations omitted).

*Scarborough* post-dated both *Heller* and *McDonald*, but did not cite to them. In any event, *Heller* and *McDonald* addressed the right to keep and bear arms within the home, but the right at issue in *Scarborough* was the carrying of a weapon on public streets and public property in the city of Philadelphia. In the instant matter, the trial court found *Heller* and *McDonald* distinguishable on that basis. Trial Court Opinion, 8/23/23, at 7-8.

In the ordinary case, a three-judge panel of this Court is bound by the previous precedential decisions from this Court. *Commonwealth v. Pepe*,

897 A.2d 463, 465 (Pa. Super. 2006), *appeal denied*, 946 A.2d 686 (Pa.

2008), *cert. denied*, **Pepe v. Pennsylvania**, 555 U.S. 881 (2008). But where

a decision of a previous panel of this Court is presently in conflict with a

decision from SCOTUS, we are bound to follow SCOTUS's interpretation of

federal constitutional law. **Commonwealth v. Eichler**, 133 A.3d 775, 784

n.6 (Pa. Super. 2016), *appeal denied*, 161 A.3d 791 (Pa. 2016).

This brings us to **Bruen** and **Rahimi**, both of which post-dated

**Scarborough**. Building on **Heller** and **McDonald**, **Bruen** established that

the right to keep and bear arms applies outside the home.[7] The **Bruen** Court

---

[7] Respectfully, the Dissent misunderstands this fundamental point. That is, the Dissent fails to distinguish the right involved—to keep and bear arms outside the home—from the alleged impingement of that right—the imposition of a license requirement that applies unequally throughout the Commonwealth. As a result, the Dissent's analysis of **Bruen** and **Rahimi** misses the mark. Critically, **Bruen** and **Rahimi** both defined the right involved here as the fundamental right to keep and bear arms outside the home. **Bruen** analyzed a licensing regime of state-wide applicability in New York—a so-called "may issue" licensing regime—and found it constitutionally infirm under the Second Amendment, while also recognizing that its analysis did not affect the constitutionality of the many "shall issue" state licensing regimes employed throughout the country. The particulars of New York's licensing regime, and the Supreme Court's analysis of its infirmity under the Second Amendment, do not direct the outcome of the Equal Protection challenge presently before us that requires us to determine if § 6108 places persons within the City of Philadelphia at a special disadvantage in the exercise of their Second Amendment right in comparison to all others outside Philadelphia. The **Bruen** Court had no occasion to consider the validity of a firearm licensing regime, be it "may issue" or "shall issue", that does not apply equally throughout a state. The Dissent concludes that **Rahimi**, along with **Bruen**, did not hold that "there is a right to openly carry a firearm **without obtaining a license to do so**." Dissenting Opinion, at 10 (emphasis in original). The Dissent follows **Scarborough** in defining the right involved as the "right to

*(Footnote Continued Next Page)*

- 9 -

struck down a licensing regime that required applicants to establish a "proper cause" to carry a firearm outside the home. *Bruen*, 597 U.S. at 11. *Bruen* and *Rahimi* confirm that the right involved in this case is fundamental.[8] To the extent that *Scarborough* provides precedential authority to the contrary, *Scarborough* has been abrogated by *Bruen* and *Rahimi*.

As explained above, the Equal Protection Clause requires that "all similarly situated persons are treated alike" in the exercise of constitutionally protected rights. *Small*, 722 A.2d at 672. And when presented with an equal protection claim regarding a law that burdens a fundamental right, the law is

_____

carry a concealed weapon," and/or "the right to carry a firearm on the streets of Philadelphia without a license," deeming that right not to be fundamental. *Scarborough*, 89 A.3d. at 686. Again, this sentence conflates the right itself with the restriction of that right as if they can be treated as one and the same. The right to keep and bear arms outside the home is fundamental. The requirement that you be licensed to do so is the regulation. Because *Bruen* and *Rahimi* plainly abrogate the *Scarborough* Court's non-fundamental treatment of the right involved here, we must follow *Bruen* and *Rahimi* and recognize that here we are dealing with a fundamental right. We, therefore, must consider this Equal Protection claim under a strict scrutiny analysis and not under a rational basis review as this Court did in *Scarborough*. Our Equal Protection analysis only considers whether § 6108 unlawfully discriminates in open carry licensing as between people inside and outside of Philadelphia. Since we are dealing with a fundamental right, the different treatment accorded persons within Philadelphia under § 6108 does not pass constitutional muster under a strict scrutiny analysis as we explain in the main text.

[8] We observe that three Pennsylvania Supreme Court justices have referred to the right to keep and bear arms as a "fundamental constitutional right." *Civil Rights Defense Firm, P.C. v. Wolf*, 226 A.3d 569, 570 (Pa. 2020) (Wecht, J., joined by Donohue, J., and Dougherty, J., concurring and dissenting).

- 10 -

subject to strict scrutiny. Under strict scrutiny, the Commonwealth must establish that § 6108 is "'narrowly tailored' to achieve a 'compelling' government interest." ***Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1***, 551 U.S. 701, 720 (2007). We now turn to that question.

In substance, the Commonwealth argues that it is constitutionally permissible "to provide duly elected prosecutors in certain jurisdictions with an additional law-enforcement tool, which the authorities can employ, in their discretion, to combat crime." Commonwealth's Brief at 8. The Commonwealth's argument, along with the holding in ***Scarborough***, rests on the untenable assumption, untenable after ***Bruen*** and ***Rahimi***, that the right here involved is not fundamental.

Turning again to the recent decisions from SCOTUS, the prevalence of handgun violence in the District of Columbia did not save the gun regulations at issue in ***Heller***:

> We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many *amici* who believe that prohibition of handgun ownership is a solution. The Constitution leaves the District of Columbia a variety of tools for combating that problem, including some measures regulating handguns, [….] But the enshrinement of constitutional rights necessarily takes certain policy choices off the table. These include the absolute prohibition of handguns held and used for self-defense in the home.

***Heller***, 554 U.S. at 636.

Likewise, the **Bruen** Court explained the lack of any historical analogue for a law impinging the right to bear arms throughout an entire metropolitan area:

> Although we have no occasion to comprehensively define 'sensitive places' in this case, we do think respondents err in their attempt to characterize New York's proper-cause requirement as a 'sensitive-place' law. In their view, 'sensitive places' where the government may lawfully disarm law-abiding citizens include all 'places where people typically congregate and where law-enforcement and other public-safety professionals are presumptively available' It is true that people sometimes congregate in 'sensitive places,' and it is likewise true that law enforcement professionals are usually presumptively available in those locations. But expanding the category of 'sensitive places' simply to all places of public congregation that are not isolated from law enforcement defines the category of 'sensitive places' far too broadly. **Respondents' argument would in effect exempt cities from the Second Amendment and would eviscerate the general right to publicly carry arms for self-defense [...]. Put simply, there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department.**

**Bruen**, 597 U.S. at 30–31 (emphasis added). The "sensitive places" doctrine is derived from the **Heller** Court's pronouncement that its opinion did not inhibit laws prohibiting possession of firearms in places such as schools and government buildings. **Id.** at 30 (quoting **Heller**, 554 U.S. at 626). The Commonwealth does not argue that the city of Philadelphia is a sensitive place, but this passage from **Bruen** undercuts any argument that the right to keep and bear arms is subject to greater restriction in large metropolitan areas than it is elsewhere.

Turning now to Pennsylvania jurisprudence, the Commonwealth's argument is incompatible with various pronouncements of our Pennsylvania Supreme Court. In **Ortiz v. Commonwealth**, 681 A.2d 152 (Pa. 1996), for example, our Supreme Court considered the validity of firearms regulations passed by the cities of Pittsburgh and Philadelphia despite a state statute forbidding municipalities to regulate ownership, possession, and transfer of firearms. **Ortiz** did not involve an equal protection claim, but both cities argued, as the Commonwealth does here, that "the right of a city to maintain the peace on its streets through the regulation of weapons is intrinsic to the existence of the government of that city and, accordingly, an irreducible ingredient of constitutionally protected Home Rule." **Id.** at 156. The **Ortiz** Court disagreed on several grounds, one of which is highly instructive:

> Because the ownership of firearms is constitutionally protected, its regulation is a matter of statewide concern. **The [Pennsylvania] constitution does not provide that the right to bear arms shall not be questioned in any part of the commonwealth except Philadelphia** and Pittsburgh, where it may be abridged at will, but that it shall not be questioned in any part of the commonwealth. Thus, regulation of firearms is a matter of concern in all of Pennsylvania, not merely in Philadelphia and Pittsburgh, and the General Assembly, not city councils, is the proper forum for the imposition of such regulation.

**Id.** (emphasis added).[9]

_____

[9] We note that the **Scarborough** panel found support for its holding in **Commonwealth v. Bavusa**, 832 A.2d 1042 (Pa. 2003), wherein the appellant raised an equal protection challenge to the application of § 6108
*(Footnote Continued Next Page)*

- 13 -

Likewise, in **Commonwealth v. Hicks**, 208 A.3d 916 (Pa. 2019), *cert. denied*, **Pennsylvania v. Hicks**, 140 S. Ct. 645 (2019), the Pennsylvania Supreme Court held that knowledge that a person is in possession of a firearm is not, by itself, a constitutionally permissible basis for a stop. Although **Hicks**, like **Ortiz**, was not an equal protection case, its rationale is instructive:

> Crime and violence are ever-present threats in society, and it can be tempting to look to the government to provide protection from "dangerous" people with constant vigilance. However, the protections of the Fourth Amendment remain an essential bulwark against the overreaches and abuses of governmental authority over all individuals. Notwithstanding the dangers posed by the few, **we must remain wary of the diminution of the core liberties that define our republic, even when the curtailment of individual liberty appears to serve an**

_____

similar to the one at issue in **Scarborough**. The **Bavusa** Court rejected the argument as not properly preserved, but also offered the following:

> We note that mere identification of a geographic disparity is insufficient to establish a constitutional violation. **See McGowan v. Maryland**, 366 U.S. 420, 427, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) (explaining that equality guarantees relate to "equality between persons as such, rather than between areas, and ... territorial uniformity is not a constitutional prerequisite"). Thus, such variations may be constitutionally valid, assuming the presence of a sufficient governmental interest (for example, rational basis or compelling interest, depending upon the character of the interest involved). Here, appellant has failed to identify the applicable constitutional standards, much less to develop his constitutional claims on such terms.

**Id.** at 1052. The **Bavusa** Court's statement that geographic disparities "may be constitutionally valid," is modified by what immediately follows—the validity of any such disparity depends on a sufficient governmental interest. And because the appellant in **Bavusa** did not develop argument on that point, the Court did not address it. It is now clear that § 6108 implicates a fundamental right, and nothing in **Bavusa** supports the continued constitutional validity of § 6108 under the as applied challenge now before us.

**interest as paramount as public safety.** 'Experience should teach us to be most on our guard to protect liberty when the government's purposes are beneficent. Men born to freedom are naturally alert to repel invasion of their liberty by evil-minded rulers. The greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding.'

*Id.* at 946 (emphasis added) (quoting *Olmstead v. United States*, 277 U.S. 438, 479 (1928) (Brandeis, J., dissenting)); *see also Commonwealth v. Alexander*, 243 A.3d 177 (Pa. 2020) (holding, in a search and seizure case, that we cannot ignore constitutional commands even if they pose difficulties for law enforcement). These precedents foreclose any argument that the Commonwealth's stated interest—providing law enforcement with additional tools to combat crime—is sufficiently compelling to support an impingement of the fundamental right to right to keep and bear arms in the city of Philadelphia.

Next, we turn to the Commonwealth's argument that a look back at history finds support for the idea that certain restrictions on firearms were applicable only in Philadelphia. It points to a proposed historical analogue for § 6108, a 1721 law (the "1721 Law") forbidding firing a gun in the city of Philadelphia without a special license from the governor. Commonwealth's Brief at 19. The law provided in relevant part:

Be it therefore enacted by the authority aforementioned, That if any person or persons, of what sex, age, degree or quality soever, from and after publication hereof, shall fire any gun or other firearms, or shall make or cause to be made, or sell, or utter, or offer to expose to sale, any squibs, rockets, or other fireworks, within the city of Philadelphia, without the governor's special

license for the same […] such persons so offending and being thereof convicted […] shall, for every such offense, forfeit and pay the sum of five shillings [….]

3 Pa. Statutes at Large, 253-54, (www.palrb.gov/Preservation/Statutes-at-Large/View-Document/17001799/1721/0/act/0245.pdf); last visited 1/24/25.

Before addressing the effect, if any, that this statute may have on the equal protection argument, we find it necessary to put this argument in context within the equal protection claim we are now deciding.

The Commonwealth's proposed historical analogue tracks SCOTUS's abandonment of means ends scrutiny analysis in favor of a "text-and-history" analysis as announced in **Heller, McDonald,** and as reaffirmed in **Bruen.** All three cases tested the constitutional validity of a governmental regulation that bore upon the fundamental right to keep and bear arms as guaranteed under the Second Amendment. **Heller, McDonald,** and **Bruen,** examined whether there was historical and textual precedent to support the modern-day regulations at issue in those cases. In other words, the validity of the regulation is what was at issue. An equal protection analysis continues to use tiers of scrutiny (strict, intermediate, and rational basis) depending on the classification involved to determine whether a law unfairly discriminates against a particular group of similarly situated persons. Under an equal protection analysis, the validity of the underlying regulation is not *per se* at issue; the issue is whether the law, regardless of its validity, unfairly discriminates against similarly situated persons subject to the law.

The Commonwealth's attempt to use history to bolster its equal protection argument fails because an examination of history largely misses the focus of an equal protection analysis. Here, when addressing equal protection, we are not so much concerned with the validity of section 6108, as we are with whether Appellant is unfairly discriminated against under that law in comparison to persons outside Philadelphia. We do not mean to imply that historical evidence may never be used to attempt to demonstrate whether government has a compelling interest under strict scrutiny for its law. We mean only to clarify that when engaging in an equal protection argument, scrutiny analysis is still the appropriate measure against which a law is to be examined.

For example, in **United States v. Sitladeen**, 64 F.4th 978, 987-89 (8th Cir. 2023), the defendant, an illegal alien who pled guilty to possessing a firearm, argued that the federal statute[10] prohibiting firearm possession to illegal aliens violated the Fifth Amendment's equal protection guarantee. **Sitladeen** analyzed the equal protection argument under the tiers of scrutiny; the Circuit Court did not hold that **Bruen** displaced scrutiny analysis when the right to bear arms is always in question. **Id.** at 987-89. Because illegal aliens are not a suspect class, and because the Second Amendment right to bear

_____

[10] 18 U.S.C. § 922(g)(5)(A).

arms does not extend to illegal aliens, the Circuit Court applied the rational basis test and upheld the statute. *Id.*

Turning now to the merits of this argument, the Commonwealth proposes that the 1721 Law provides historical evidence for the stricter regulation of the right to keep and bear arms in a large city such as Philadelphia. *Id.* Regardless of any conflation between history and text, and scrutiny analysis, this argument is non-availing. Put simply, carrying a gun in public in Philadelphia and **shooting** a gun in public in Philadelphia are two very distinct actions. The legalities of the latter are entirely outside the scope of the case before us. The 1721 Law does not in any way advance the argument that § 6108 passes strict scrutiny.

In light of the foregoing, we conclude that § 6108 is unconstitutional on an equal protection basis as applied to the Appellant. The right to keep and bear arms outside the home is a fundamental right protected by the Second Amendment. Section 6108 requires persons who wish to openly carry a firearm on public streets and public property in Philadelphia to obtain a carry license. Open carry without a license is lawful for those 18 years of age and older elsewhere in the Commonwealth but criminal in Philadelphia. Thus, § 6108 places persons within the City of Philadelphia at a special disadvantage in the exercise of their Second Amendment right. The Commonwealth has failed to articulate a compelling interest in support of § 6108. Section 6108 fails to pass strict scrutiny and is therefore unconstitutional under the Equal

Protection Clause of the Fourteenth Amendment to the United States Constitution as applied to Appellant.

Pursuant to the Supremacy Clause of the United States Constitution,[11] the same result must obtain under the Pennsylvania Constitution. We therefore do not separately address Appellant's arguments under the Pennsylvania Constitution. Nor do we address Appellant's argument that a license requirement for open carry violates the Second Amendment. Thus, nothing we have written bears one way or the other on the constitutionality of a state-wide law requiring a license for open carry. Finally, we do not address Appellant's Second Amendment challenge to the licensing regime codified at 18 Pa.C.S.A. § 6109.

Because § 6108 is unconstitutional as applied to Appellant, we vacate the judgment of sentence.

Judgment of sentence vacated. Jurisdiction relinquished.

President Judge Lazarus joins the opinion.

Judge Lane files a dissenting opinion.

_____

[11] The Supremacy Clause provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/23/2025