J-S21020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
CURTIS SMITH :
:
Appellant : No. 2781 EDA 2024

Appeal from the Judgment of Sentence Entered April 14, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006209-2021

BEFORE: KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED SEPTEMBER 16, 2025**

Appellant, Curtis Smith, appeals *nunc pro tunc* from the judgment of

sentence entered in the Philadelphia County Court of Common Pleas, following

his bench trial convictions for persons not to possess firearms, carrying a

firearm without a license, carrying firearms on public streets in Philadelphia,

possessing instruments of crime ("PIC"), terroristic threats, simple assault,

and recklessly endangering another person ("REAP").[1]  We affirm.

The trial court set forth the relevant facts of this case as follows:

> On June 15, 2021, at approximately 2:08 p.m., Dewey
> Wilson (hereinafter "Mr. Wilson"), arrived at 6532 Limekiln
> Pike in Philadelphia, PA to repair a toilet at the request of
> his in-laws (the landlords).  Mr. Wilson was accompanied by
> his wife, son, and a man who has "done work" for the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105, 6106, 6108, 907, 2706, 2701, and 2705, respectively.

landlords of the rental property. Upon arrival at the property, Mr. Wilson saw Appellant seated on the front steps. Mr. Wilson approached the front door and introduced himself to Appellant, who responded aggressively, asking why they were there.

Mr. Wilson tried to open the front door and found it locked. Appellant was behind him, encroaching upon his personal space, upset and cursing. Mr. Wilson asked Appellant to "back up" because he was "too close." As a result of the aggressive interaction, Mr. Wilson was pressed with his back against the door while Appellant was harassing him. Mr. Wilson attempted to retreat from the situation and pushed past Appellant who then fell backward over the porch railing. When Appellant arose from the ground, he removed a firearm from behind his back, which he brandished and then pointed at Mr. Wilson as he threatened to shoot him and his wife.

Upon seeing the gun, Mr. Wilson moved away from the property to the street, but Appellant followed. By the time Mr. Wilson reached the sidewalk Appellant was within "3 or 4 feet" of him and swung the gun in his direction. Mr. Wilson blocked the swing, but the gun hit his shoulder causing a bruise. Appellant then "rack[ed]" the gun, pointed it at Mr. Wilson and his wife and again threatened to shoot them. Afterward, Appellant drove away in his vehicle leaving the area. The police were called, and Mr. Wilson provided a statement.

On the following day, June 16, 2021, Detective Quay Chim … obtained and executed a search warrant at Appellant's identified residence…. Detective Chim found a handgun and two pieces of mail addressed to Appellant in a drawer of an armoire in his home.

(Trial Court Opinion, filed 10/28/24, at 2-3) (record citations omitted).

Appellant proceeded to a bench trial on January 5, 2022. That same day, the court found Appellant guilty of various firearms offenses, as well as

PIC, terroristic threats, simple assault, and REAP.[2]  With the benefit of a presentence investigation ("PSI") report, the court conducted Appellant's sentencing hearing on April 14, 2022.  At the conclusion of the hearing, the court sentenced Appellant to five and one-half (5½) to eleven (11) years' imprisonment for his persons not to possess firearms conviction.[3]  The court imposed no further penalties for the remaining convictions.  Appellant filed an untimely notice of appeal on May 25, 2022.  This Court quashed the appeal on July 26, 2023.  **See Commonwealth v. Smith**, 303 A.3d 779 (Pa.Super. 2023) (unpublished memorandum).

On August 30, 2023, Appellant timely filed a *pro se* petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  The court appointed current counsel, who filed an amended PCRA petition on March 1, 2024.  In it, Appellant requested the reinstatement of his right to file post-sentence motions and a notice of appeal *nunc pro tunc*.  In response, the Commonwealth did not object to the requested relief.  By order entered April 25, 2024, the court granted PCRA relief and reinstated Appellant's right to file

_____

[2] The court found Appellant not guilty of an additional count of aggravated assault.

[3] With an offense gravity score of eleven (11) and a prior record score of five (5), the standard range of the Sentencing Guidelines provided for a minimum sentence of seventy-two (72) to ninety (90) months' imprisonment, plus or minus twelve (12) months for aggravating or mitigating circumstances. (**See** N.T. Sentencing Hearing, 4/14/22, at 5; Trial Court Opinion at 6).  Thus, Appellant's sentence fell within the mitigated range of the guidelines.

- 3 -

post-sentence motions and a notice of appeal *nunc pro tunc*.

Appellant timely filed a post-sentence motion *nunc pro tunc* on May 3, 2024, challenging the weight of the evidence and the discretionary aspects of his sentence. By order entered August 31, 2024, Appellant's post-sentence motion *nunc pro tunc* was denied by operation of law. Appellant timely filed a notice of appeal *nunc pro tunc* on September 11, 2024. On September 12, 2024, the court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on October 3, 2024.

Appellant now raises two issues for our review:

Was the verdict against the weight of the evidence?

Did the sentencing court abuse its discretion by considering a juvenile arrest that did not result in an adjudication of delinquency?

(Appellant's Brief at 3).

In his first issue, Appellant contends that "the verdict is so contrary to the evidence that it shocks the conscience." (*Id.* at 9). Appellant complains that his convictions were "based primarily on the uncorroborated testimony of the complaining witness, despite the presence of three other potential witnesses." (*Id.*) Appellant also emphasizes that: 1) the complainant admitted to being the aggressor; 2) the complainant's description of the firearm did not match the firearm recovered by the police; and 3) the Commonwealth presented weak evidence to link Appellant to the property

where police recovered the firearm. Appellant concludes that the court's verdict was against the weight of the evidence, and he is entitled to a new trial on this basis. We disagree.

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> ***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The Uniform Firearms Act provides, in relevant part, as follows:

> **§ 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a)   Offense defined.—**
>
> (1)   A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain

a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\* \* \*

**§ 6106.  Firearms not to be carried without a license**

**(a)  Offense defined.—**

(1)  Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

\* \* \*

**§ 6108.  Carrying firearms on public streets or public property in Philadelphia**

No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:

(1)  such person is licensed to carry a firearm; or

(2)  such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108.

The Crimes Code also defines the offense of PIC as follows:

**§ 907.  Possessing instruments of crime**

**(a)  Criminal instruments generally.—**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

\* \* \*

**(d) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

*    *    *

**"Weapon."** Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.

18 Pa.C.S.A. § 907(a), (d).

The Crimes Code defines the offense of terroristic threats as follows:

**§ 2706. Terroristic threats**

**(a) Offense defined.**—A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S.A. § 2706(a)(1).

The Crimes Code defines the offense of simple assault as follows:

**§ 2701. Simple assault**

**(a) Offense defined.**—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1).

The Crimes Code defines REAP as follows:

**§ 2705. Recklessly endangering another person**

> A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S.A. § 2705.

Instantly, Mr. Wilson testified at trial as follows. On June 15, 2021, Mr. Wilson went to a property on Limekiln Pike in Philadelphia. Mr. Wilson, along with his wife and another individual, needed to repair a leaking toilet at the request of his mother-in-law, who was the landlord for the property. Upon arriving at the property, Mr. Wilson saw Appellant sitting outside. When Mr. Wilson approached the front door of the property, Appellant was "right there in [Mr. Wilson's] face." (N.T. Trial, 1/5/22, at 15). Appellant began cursing, "'F' this, 'F' you, just upset[.]" (*Id.*) Appellant's positioning left Mr. Wilson with his "back … literally against the door." (*Id.* at 16).

Mr. Wilson pushed Appellant in an attempt to get away, and Appellant fell over. When Appellant regained his footing, Appellant "reached in his back behind his shirt, and pulled out a gun." (*Id.*) Appellant "[s]tarted pointing it, waiving it around, [saying] he is going to shoot [Mr. Wilson], shoot [Mr. Wilson's] wife, calling her … [a] whore." (*Id.* at 17). Mr. Wilson took a "good look" at the firearm, which he described as a "black semiautomatic pistol with a tan handle." (*Id.*) Eventually, Appellant "swings at [Mr. Wilson] with the gun." (*Id.* at 20). Mr. Wilson blocked the punch with his forearm, and the firearm made contact with Mr. Wilson's shoulder. Appellant then loaded the firearm and continued "pointing the gun, waving it and pointing at [Mr.

Wilson's] wife like he is going to shoot[.]" (*Id.*) Appellant subsequently drove away.

The day after this incident, Detective Chim executed a search warrant at a residence on Croskey Street in Philadelphia. Detective Chim recovered "a black handgun with a tan grip" from the top of an armoire in the dining room. (*Id.* at 40). On top of the same armoire, Detective Chim found "two pieces of U.S. mail addressed to [Appellant]." (*Id.* at 41). The pieces of mail were sent to Appellant by TD Bank and Aetna Insurance Company. Following Detective Chim's testimony, the parties stipulated that Appellant did not have a valid license to carry a firearm in Pennsylvania, and Appellant had a prior conviction rendering him ineligible to possess firearms. (*See id.* at 48-49).

Here, the Commonwealth's witnesses established that Appellant committed the crimes at issue. The court was free to believe all, part, or none of Mr. Wilson's testimony, and it was permitted to determine that Mr. Wilson's testimony was credible. *See Champney, supra*. On this record, we decline Appellant's invitation to substitute our judgment for the factfinder, and we conclude that Appellant is not entitled to relief on his weight claim. *Id.*

In his second issue, Appellant relies on *Commonwealth v. Berry*, ____ Pa. ____, 323 A.3d 641 (2024), for the proposition that "prior arrests not resulting in conviction or adjudication of delinquency are irrelevant considerations at sentencing." (Appellant's Brief at 10). Appellant insists that the sentencing court erred in the instant case because it "considered, at least

in part, Appellant's prior arrest for assault that did not yield an adjudication of delinquency." (*Id.*) Appellant concludes that the sentencing court abused its discretion by considering an impermissible factor, and this Court must remand the matter for resentencing. We disagree.

As presented, Appellant's claim challenges the discretionary aspects of his sentence. *See Berry, supra* (stating claim that sentencing court erred by crafting sentence based, in part, on arrest record constitutes challenge to discretionary aspects of sentencing). "Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa.Super. 2008), *cert. denied*, 556 U.S. 1264, 129 S. Ct. 2450, 174 L.Ed.2d 240 (2009). Prior to reaching the merits of a discretionary aspects of sentencing issue:

> We conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa.Super. 2006), *appeal denied*, 589 Pa. 727, 909 A.2d 303 (2006) (quoting *Commonwealth v. Hyland*, 875 A.2d 1175, 1183 (Pa.Super. 2005)).

When appealing the discretionary aspects of a sentence, an appellant must invoke this Court's jurisdiction by including in his brief a separate concise

statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to **exceptional** cases." *Phillips, supra* at 112 (emphasis in original) (internal citation and quotation marks omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa.Super. 2003).

> A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Caldwell*, 117 A.3d 763, 768 (Pa.Super. 2015) (*en banc*), *appeal denied*, 633 Pa. 774, 126 A.3d 1282 (2015) (quoting *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa.Super. 2011)). A substantial question is raised when an appellant alleges that his sentence is excessive because of the trial court's reliance on impermissible factors. *See Commonwealth v. Allen*, 24 A.3d 1058, 1064-65 (Pa.Super. 2011).

Here, Appellant timely filed a notice of appeal *nunc pro tunc*, he preserved his issue by including it in his post-sentence motion *nunc pro tunc*,

and his appellate brief includes a Rule 2119(f) statement. Appellant's claim also raises a substantial question as to the appropriateness of the sentence imposed. *See id.* Accordingly, we proceed to address the merits of Appellant's issue.

This Court reviews discretionary sentencing challenges based on the following standard:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa.Super. 2022) (quoting *Commonwealth v. Clemat*, 218 A.3d 944, 959 (Pa.Super. 2019)).

> When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Summers*, 245 A.3d 686, 693 (Pa.Super. 2021), *appeal denied*, ___ Pa. ___, 276 A.3d 700 (2022) (quoting *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075 (Pa.Super. 2019)).

"As a general matter, evidence of a defendant's arrest record is inadmissible and irrelevant in nearly every criminal law context." *Berry, supra* at ___, 323 A.3d at 648. "Such evidence also is inadmissible at

- 12 -

sentencing, generally." *Id.*

> Thus, our law is clear. Prior arrests shed no reliable light upon criminal propensity, cannot be used as evidence of bad character or for impeachment purposes, are not a relevant sentencing consideration, and have no probative value for establishing a defendant's likelihood of recidivism.
>
> Nor are prior arrests a relevant consideration under the Sentencing Code. Section 9721(b) of the Sentencing Code requires that a sentencing court, in determining the sentence to impose, consider the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, the defendant's rehabilitative needs, and the guidelines created by the Pennsylvania Commission on Sentencing. A sentence of total confinement must be premised upon consideration of the nature and circumstances of the crime and the history, character, and condition of the defendant. At no point does the Sentencing Code require a court to consider independently a defendant's prior arrests in crafting an individual sentence.

*Id.* at ___, 323 A.3d at 649 (internal footnotes and quotation marks omitted).

Additionally, the PSI report "shall include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the judge in determining sentence." Pa.R.Crim.P. 702(A)(3). "[I]t is well-settled that when the trial court has the benefit of a [PSI] report, it is presumed that the court was both aware of and appropriately weighed all relevant information contained therein." *Commonwealth v. Brown*, 249 A.3d 1206, 1212 (Pa.Super. 2021).

Instantly, the sentencing court provided a lengthy statement analyzing the particular circumstances of Appellant's offenses:

> And so when the landlord sends somebody to repair

something and they notified you that they are going to do repairs and let, you know, … they did send the person for the repairs, especially if you were calling about the repairs. And so they have a right to send more than one person. Now, if you don't agree to allow them entry, by getting into a physical altercation with them, what I can't understand is why you did not contact the police.

\*   \*   \*

When I listened to the testimony, I did not believe that [Mr. Wilson] came there with the intention of fighting.  And I know that people can argue and have disagreements and things get a little heated and, you know, what can happen when you get too close to each other's faces.  And this got out of hand.

\*   \*   \*

The issue in this case is the firearm.  That is where the issue of your sentencing comes into play.  There was testimony about a firearm being used in the assault and then the police found a firearm in connection with you.  And so that is what impacts your sentence.

(N.T. Sentencing Hearing at 22-24).

Thereafter, the court engaged in a separate discussion regarding how Appellant's prior record score impacted the Sentencing Guidelines: "That prior record is your past.  And that impacts the guidelines, the range for your sentencing[.]" (*Id.* at 24).  At that point, the court recounted some of the prior offenses listed in the PSI.  The court referenced "[o]ne assault when you were a juvenile." (*Id.*)  Defense counsel immediately interrupted, noting that Appellant "was not adjudicated delinquent of a felony [or] enumerated misdemeanor offense." (*Id.* at 25).  The court responded, "I know it's not," and it proceeded to announce Appellant's sentence.  (*Id.*)

- 14 -

Finally, the court formally announced its consideration of additional, specific factors:

> In issuing this sentence, I have taken into account the need to protect the public, the gravity of the offense as it relates to the impact on the life of the victim and the community, as well as the rehabilitative needs of the defendant. In carefully considering that, this [c]ourt, in conjunction with the [PSI] report, will order that he submit to random drug screens.
>
> *    *    *
>
> And in the sentence I have considered all sentencing guidelines. This is a mitigated sentence, as indicated by counsel. And I considered the PSI, testimony and letters received. Thank you.

(***Id.*** at 25-26, 28).

On this record, the court did not abuse its discretion. ***See Bankes, supra***. When viewed in context, the court did not improperly consider Appellant's prior arrest in fashioning the sentence. Rather, any mention of the prior arrest was part of an unrelated discussion meant to explain the impact of a prior criminal record on the sentencing process. Here, the court's comments reveal that it based Appellant's sentence upon the particular circumstances of the offenses, where Appellant escalated the confrontation with Mr. Wilson by introducing the firearm. Moreover, the court's reliance on the PSI report, combined with its on-the-record statements in support of the sentences, demonstrates that it was aware of the relevant sentencing considerations. ***See Summers, supra***. We conclude that the court appropriately weighed those considerations in imposing this mitigated-range

- 15 -

sentence. Therefore, Appellant is not entitled to relief on his challenge to the discretionary aspects of sentencing.[4] Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/16/2025

---

[4] Considering Appellant's conviction for carrying firearms on public streets in Philadelphia, we must acknowledge this Court's recent decision in **Commonwealth v. Sumpter**, 2025 PA Super 124 (filed June 23, 2025), which deemed this statute unconstitutional on an equal protection basis as applied to the appellant in that case. **Sumpter**, however, analyzed the constitutionality of Section 6108 insofar as the statute prohibits the unlicensed **open** carry of firearms on public streets and public property in the city of Philadelphia. Here, the record makes clear that Appellant's firearm was concealed on his person at the time of the incident. (**See** Criminal Complaint, dated 6/19/21, at 1). Moreover, Appellant's brief makes no argument regarding the constitutionality of the statute at issue. **See Commonwealth v. Spone**, 305 A.3d 602, 609 (Pa.Super. 2023) (reiterating that issues of constitutional dimension cannot be raised for first time on appeal). Based upon the foregoing, **Sumpter** affords no relief for Appellant.